**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DIANE MARIE TEMPLE,

       Plaintiff,

v.                                         CIV 16-1007 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.

# <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (*Doc. 20*) filed on April 6, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 7, 11.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

## I.    Procedural History

On December 31, 2012, Ms. Diane Temple (Plaintiff) protectively filed applications with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA), and for Supplemental Security Income under Title XVI of the SSA. Administrative Record[1] (AR) at 11, 177-78, 184. Plaintiff alleged a disability onset date of June 1, 2012. AR at 11,

---

[1] Document 15-1 contains the sealed Administrative Record. *See Doc. 15-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

177, 184. Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially (AR at 84-85) and on reconsideration (AR at 112-13). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her applications. AR at 136-37.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 26-55. ALJ Eric Weiss issued an unfavorable decision on April 24, 2015. AR at 8-24. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 6-7), which the council denied on August 10, 2016 (AR at 1-5). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of

the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[2] ALJ Weiss found that while Plaintiff worked cleaning houses in 2012 and 2013, and as a delivery driver in 2014, her earnings since 2010 do not rise to the level of gainful activity. AR at 13. Consequently, Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2012. AR at 13 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: depressive disorder, and generalized anxiety disorder . . . ." AR at 14 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

---

[2] ALJ Weiss first found that Plaintiff's "earning record shows that [she] has acquired sufficient quarters of coverage to remain insured through December 31, 2012." AR at 11, 13.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . ." AR at 15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). In making his determination, ALJ Weiss considered listings 12.04 (affective disorders) and 12.06 (anxiety related disorders). AR at 15.

The ALJ first examined whether Plaintiff's mental impairments met the "paragraph B" criteria. He found that Plaintiff has mild restrictions in her activities of daily living (AR at 15 – noting Plaintiff "lives alone and cares for four dogs[,]" "occasionally works as a housekeeper" and works for a courier service approximately 20 hours/week, in which she drives locally and to Texas and Colorado) (citing AR at 76, 105, 400); moderate difficulties in the area of social functioning (AR at 15 – noting that Plaintiff "testified that she has no problem working with people, . . . is sometimes bothered by crowds, . . . limits her contact with others[,]" and had a roommate in 2012, 2013, and at the time of the hearing) (citing AR at 232-40); and moderate difficulties in the area of concentration, persistence or pace (AR at 15-16 – noting Plaintiff's work "as a courier evinces her ability to concentrate and persist[,]" her testimony "that her head pain distracts her attention and" limits her courier work, her report "that she forgets a lot of things and cannot get organized[,]" and commenting on Plaintiff's "difficulty focusing on [the ALJ's] questions during the hearing") (citing AR at 237).

The ALJ acknowledged Plaintiff's two-day emergency admission to a psychiatric unit on July 28, 2012, due to "paranoid delusions in connection with amphetamine toxicity[,]" "triggered by recent domestic violence against her that resulted in charges of

4

attempted murder and kidnapping against her boyfriend." AR at 16. He found, however, that Plaintiff has experienced no episodes of decompensation of extended duration, because the episode only lasted two days (AR at 16 – noting that Plaintiff "was assessed with substance induced psychotic disorder (meth) and acute stress disorder"). Because the ALJ did not find that Plaintiff has at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, he determined that her mental impairments did not satisfy the "paragraph B" criteria. AR at 16. The ALJ also found that Plaintiff did not meet the "paragraph C" criteria of 12.04 or 12.06. AR at 16.

At Step Four, the ALJ Weiss concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" he did not find Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms . . . entirely credible . . . ." AR at 18. The ALJ considered the evidence of record, including the psychological consultative examination performed by David LaCourt, Ph.D., the opinion of state agency DDS consultant Cheryl Woodson-Johnson, and the report by Plaintiff's roommate. AR at 14-19. Ultimately, the ALJ found that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to perform simple, routine and repetitive tasks and is limited to simple work related decisions in a work environment with only occasional changes in the work setting. She may have only occasional interaction with the public, coworkers and supervisors.

AR at 17. ALJ Weiss determined that Plaintiff "is capable of performing past relevant work as a cleaner/housekeeper . . . and deliverer/courier[,]" neither of which "require the performance of work-related activities precluded by" Plaintiff's RFC. AR at 19. The ALJ

ultimately decided that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 1, 2012, through the date of [the ALJ's] decision . . . ." AR at 20 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

## III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even

though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff asserts two broad issues in her Motion. First, Plaintiff argues that the ALJ failed to correctly weigh both the examining psychologist's and the non-examining psychiatrist's opinions. *Doc. 20* at 6-11. Second, Plaintiff proposes a variety of arguments to support her contention that the ALJ's "past work finding is contrary to the evidence." *Id.* at 11.

### A. ALJ's Weiss' assessment of Dr. LaCourt's opinion is inadequate to uphold the ALJ's ultimate decision.

Plaintiff argues that ALJ Weiss's analysis of Dr. LaCourt's opinion constitutes reversible error for two reasons: (1) the ALJ's rejection of Dr. LaCourt's opinion on Plaintiff's marked limitations is not supported by substantial evidence; and (2) the ALJ erred by failing to incorporate in the RFC limitations findings by Dr. LaCourt that Plaintiff has a moderate limitation in her ability to carry out instructions due to "task impersistence," and marked limitations in working without supervision and in working with supervisors. *Doc. 20* at 8-10.

DDS referred Plaintiff to a one-time consultation with Dr. LaCourt on June 1, 2013. AR at 400. Dr. LaCourt noted the following background information: Plaintiff lives by herself (with four dogs). AR at 400. She dropped out of school in 9th grade to have her first child; she eventually obtained her GED. AR at 400. Plaintiff has worked over the years for a house-cleaning agency, but she was fired in August 2012. AR at 400.

Her ex-boyfriend[3] beat Plaintiff in the head with a rock in June 2012, and Dr. LaCourt noted that it was unclear what type of treatment she received after that beating. AR at 400. Plaintiff stated that she "has been unable to go out of the house after dark since the assault[,] and that it" is hard to go out even during the daytime. AR at 400-01. Plaintiff also reported that one month after the beating, she checked herself into a psychiatric inpatient "detox" stay because she was having methamphetamine-induced auditory hallucinations and paranoid delusions (she thought someone was after her) which "remitted rapidly . . . ." AR at 400, 401. Plaintiff discussed her other medical history with Dr. LaCourt, including her broken right index finger and her Hepatitis C diagnosis. AR at 401.

In the "Findings and Interpretation" section of his report, Dr. LaCourt noted: Plaintiff wore clean, appropriate clothing, had normal grooming and hygiene, and functional posture and gait. AR at 401. She neither reported nor exhibited "untoward movements, mannerisms, tremors or tics . . . ." AR at 401. She showed normal attention "with a commensurate level of general concentration." AR at 401. While Dr. LaCourt did not observe "an appreciable amount of scatter or variability of concentration" during the appointment, Plaintiff reported she was experiencing (both at the appointment and at other times) "ongoing/persisting anxiety of a free-floating kind, i.e., without identifiable recent/proximal antecedents." AR at 401.

---

[3] Plaintiff's counsel notes that while some of the record evidence (including Dr. LaCourt's notes) refers to this person as Plaintiff's ex-husband, he was actually her ex-boyfriend. *Doc. 20* at 17 n.6. The ex-boyfriend was convicted of attempted murder in connection with the beating, AR at 400, and apparently released from prison before the January 2015 hearing before the ALJ. AR at 35.

Dr LaCourt found that Plaintiff was oriented "to time, place, person and partially to the general situation." AR at 401. Her recall and memory were grossly intact "with varying degrees of low detail/vague retrieval" related to "small gaps associated with the assault." AR at 401. Plaintiff denied regular counseling or psychotherapy. AR at 401. Plaintiff "reported ongoing sleep issues, . . . even with medications to help her sleep." AR at 401. While she noted "reduced-awareness perceptions 'in the shadows' at night[,] . . . there was no direct evidence of active hallucinatory or delusional process . . . ." AR at 401. Plaintiff had taken self-defense classes to feel more secure. AR at 401. Plaintiff's affect was appropriate; she was pessimistic, anxious, and had a dysphoric mood. AR at 401. She did not report any "untoward preoccupations" including any "self-harm ideation." AR at 401. Plaintiff displayed average to low-average intellectual functioning and reported "no difficulties with reading or performing everyday math as part of household duties." AR at 401-02. Dr. LaCourt listed the medications Plaintiff was taking, noted that she had occasional alcoholic beverages but not regularly or to the point of intoxication, and indicated that she had not taken illicit substances since July 2012 (methamphetamine). AR at 402.

Dr. LaCourt diagnosis of Plaintiff included Generalized Anxiety Disorder, methamphetamine abuse (in sustained full remission), and Depressive Disorder NOS. AR at 402. He opined that Plaintiff had the following limitations:

- Understanding and remembering detailed/complex instructions: no limitation; very short/simple instructions: no limitation
- Sustained concentration/task persistence, for carrying out instructions: moderate limitation associated with task impersistence; attending and concentrating: no limitation; working without supervision: marked limitation

- Social interaction, with the public: moderate limitation; with coworkers: marked limitation; with supervisor: marked limitation associated with anxiety
- Adaptation to changes in the workplace: no limitation; aware of normal hazards/reacting appropriately: mild limitation
- Use of public transportation/travel to unfamiliar places: marked limitation associated with anxiety about being around other people for extended periods of time

AR at 402. He opined that Plaintiff could manage her own benefits. AR at 402.

The ALJ summarized Dr. LaCourt's examination notes and findings, including a full recital of Dr. LaCourt's opinion on Plaintiff's limitations. AR at 18. ALJ Weiss found that Plaintiff "is more limited in the area of concentration, persistence and pace than Dr. LaCourt opined." AR at 18. He determined that "the evidence and [Plaintiff's] testimony do not support [Dr. LaCourt's] opinion that she has marked limitations in working with co-workers or supervisors because she testified that she has no problem working with people." AR at 18. The ALJ gave Dr. LaCourt's opinion partial weight. AR at 18.

Notably, while Plaintiff cites to 20 C.F.R. § 404.1527, she stops short of actually arguing that the ALJ failed to analyze Dr. LaCourt's opinion using the factors in that section. *See Doc. 20* at 6. Instead, Plaintiff argues that (1) the ALJ erred in rejecting the marked limitations opined by consultative psychologist Dr. LaCourt; and (2) the RFC fails to account for Dr. LaCourt's finding regarding a moderate limitation in Plaintiff's ability to carry out instructions due to "task impersistence." *See Doc. 20* at 7-10.

### 1. The ALJ's findings regarding the marked limitations Dr. LaCourt opined are supported by substantial evidence.

Dr. LaCourt opined that Plaintiff has marked limitations in four areas: (1) working without supervision; (2) working with coworkers; (3) working with supervisors

(associated with anxiety); and (4) using public transportation (associated with anxiety about being around other people for extended periods of time). AR at 402.

Plaintiff begins with Dr. LaCourt's assessed limitations on working with coworkers and supervisors. In these two areas, the ALJ reasoned the finding of marked limitations is not supported, because Plaintiff testified "that she has no problem working with people." AR at 18. Plaintiff argues this was error, because Plaintiff *avoids* dealing with people; for example, when she delivers packages, she testified that she will go "in and out real fast." *Doc. 20* at 8 (quoting AR at 45) Plaintiff also testified that her coworkers say she "always ha[s] a smile on [her] face," but at the same time, "she reported checking behaviors while in her car in parking lots because of anxiety about who might be there." *Id.* (citing AR at 45-47).

However, substantial evidence does support the ALJ's rejection of marked limitations on Plaintiff's ability to work with both coworkers and supervisors, as well as her ability to use public transportation due to anxiety about being around people.[4] The state agency DDS consultant, on whose opinion the ALJ placed great weight, found that Plaintiff was "not significantly limited in interacting appropriately with the general public [and in] getting along with co-workers[,]" and that Plaintiff is only moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *See* AR at 65. The consultant also explained in Section III that Plaintiff would be "able to

---

[4] Plaintiff made no specific arguments about the marked limitation on her ability to use public transportation (due to anxiety about being around people). *See Doc. 20.* The Court notes, however, that the ability to use public transportation is not a required skill for unskilled work. *See*, *e.g.*, Soc. Sec. Ruling, SSR 85-15, Titles II & XVI: Capability to do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, at *4 (Jan. 1, 1985). More importantly, the ALJ sufficiently discussed Plaintiff's anxiety as explained in this section.

perform work where . . . supervision required is simple, direct and concrete (unskilled)." AR at 66.

The fact that Plaintiff has been working as a courier negates the fact that she has marked limitations working with supervisors, as she is obviously supervised, at least remotely. And Plaintiff is clearly able to manage her anxiety working around people as a courier, even if that means she makes her deliveries quickly and avoids excessive interaction with others.

The ALJ discussed the fact that based on Plaintiff's testimony, "it appears that [her] past reports of her mental limitations, including her fear of leaving her home, or even to occupy parts of her home, are improved. Her testimony describes a current ability to not only leave her home, but to also maintain part-time employment." AR at 19. Finally, while not noted in the ALJ's decision, the following exchange took place at the hearing:

"Q    [Dr. LaCourt] said that anxiety-related events caused limitation [sic] in social interaction with coworkers and supervisors.

A    Yes, I didn't have a supervisor *back then*. . . . I totally kept to myself almost." AR at 38-39 (emphasis added). She explained that *back then*, at the time of her one-time evaluation with Dr. LaCourt in June 2013, she did not have a supervisor and kept to herself. She also testified that her anxiety was "real bad" for "about a year or so" after the June 2012 incident with her ex-boyfriend. AR at 35. Her interview with Dr. LaCourt came within that year time period. After that period of bad anxiety, she began working again as a courier. AR at 35-36.

Importantly, the ALJ recognized Plaintiff's anxiety about being around others and incorporated a limitation on her ability to work around the public and with coworkers and supervisors in Plaintiff's RFC, as he limited her to "only occasional interaction with the public, coworkers and supervisors." AR at 17. Thus, the ALJ did not completely reject these marked limitations,[5] and the VE considered these limitations when identifying jobs Plaintiff can perform. *See*, *e.g.*, *Chapo v. Astrue*, 682 F.3d 1285, 1290-91 (10th Cir. 2012) (noting that where ALJ effectively rejected certain moderate and marked limitations opined by a treating psychologist, the VE did not have the opportunity to consider those limitations).

Substantial evidence also supports the ALJ's rejection of a marked limitation on Plaintiff's ability to work without supervision, because the ALJ gave great weight to the state agency DDS consultant, who found that Plaintiff was not significantly limited in her ability to "sustain an ordinary routine without special supervision . . . ." AR at 18. The ALJ noted that this opinion was consistent with the longitudinal record. AR at 18. Included in the longitudinal record, and noted by the ALJ earlier in the decision, is the fact that Plaintiff occasionally works as a housekeeper, apparently on her own and without supervision. AR at 15, 43. And while the ALJ did not note the following exchange that took place at the hearing, it is also relevant to this topic:

"Q      You were seen by a psychologist named David LaCourt back in June 2013. . . . And he in his report talked about problem want [sic] you were having with respect to working without supervision? Do you consider that a problem?

---

[5] A "marked" limitation is a "[s]erious limitation[]" and signifies that a plaintiff's ability to function is "severely limited but not precluded . . . ." *Chapo v. Astrue*, 682 F.3d 1285, 1289 n.2 (10th Cir. 2012) (quotation omitted).

A    No."

AR at 38. The ALJ specifically asked about Dr. LaCourt's finding on Plaintiff's ability to work without supervision, and Plaintiff negated Dr. LaCourt's opinion.

While the evidence could possibly be construed to support Plaintiff's conclusion, there is substantial evidence to support the ALJ's ultimate decision, and the Court will not displace that decision simply because there are two conflicting views. *See Lax*, 489 F.3d at 1084 (quotation omitted). There is no reversible error on this issue.

### 2.    The ALJ on remand must address and explain any moderate limitation in Plaintiff's ability to carry out instructions.

Plaintiff also contends that her RFC fails to account for Dr. LaCourt's finding regarding a moderate limitation in Plaintiff's ability to carry out instructions due to "task impersistence." *Doc. 20* at 9. While the Court understands the ALJ's ultimate decision on this matter, the ALJ failed to sufficiently explain his finding. Because the Court is remanding for other reasons (*see* Section IV(B)), it also directs the ALJ to explain either why this moderate limitation is rejected, or why the RFC incorporates the limitation.

### a.    The definition of unskilled work includes the ability to carry out simple instructions.

The Tenth Circuit has held that "a reference to 'unskilled work' may be construed to incorporate the mental functions associated with unskilled work, which are 'the abilities (on a sustained basis) to understand, carry out, and remember *simple* instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" *Adkins v. Colvin*, No. 14-CV-01043-LTB, 2015 WL 4324564, at *10 (D. Colo. July 16, 2015), *aff'd*, 645 F. App'x

807 (10th Cir. 2016) (emphasis added) (quoting *Jaramillo v. Colvin,* 576 F. App'x. 870,

875 (10th Cir. 2014) (quoting SSR 85–15, 1985 WL 56857, at *4 (Jan. 1, 1985))).

The oft-cited case in this area is *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir.

2014). In *Jaramillo*, the ALJ found the plaintiff could "perform sedentary work but was

'limited to simple, routine, repetitive and unskilled tasks' and had to avoid all exposure

to direct sunlight." *Jaramillo*, 576 F. App'x at 872. The ALJ put "great weight" on the

consultative psychiatrist's opinion, who found moderate limitations on the plaintiff's

ability to "carry out instructions," "attend and concentrate," and "work without

supervision." *Id.* The ALJ also placed "great weight" on the state agency doctor who had

reviewed the medical records (including the consultative psychiatrist's opinion) and had

completed a Mental Residual Function Capacity Assessment (MRFCA), noting in the

Section III narrative portion that the plaintiff in that case was able to "carry out simple

instructions . . . ." *Id.* at 873.

The Tenth Circuit discussed SSR 85-15 and noted that "[t]he basic mental

demands of competitive, remunerative, unskilled work include the abilities (on a

sustained basis) to understand, carry out, and remember **simple** instructions . . . ." *Id.* at

875 (emphasis added) (discussing Soc. Sec. Ruling, SSR 85-15, Titles II & XVI:

Capability to do Other Work – The Medical-Vocational Rules as a Framework for

Evaluating Solely Nonexertional Impairments, at *4 (Jan. 1, 1985)). "These abilities are

examples of work-related mental functions." *Id.* (citing SSR 96–8p, 1996 WL 374184, at

*6). "Therefore, a limitation to unskilled work or, as the ALJ phrased it here, 'unskilled

tasks,' could be used as shorthand for the specific mental abilities described in SSR 85–

15 . . . ." *Id.* The RFC tracked the opinion of the DDS doctor (who opined in Section III

that the plaintiff could carry out *simple* instructions), but it did not comport with the moderate limitation the consultative psychiatrist found on the plaintiff's ability to carry out instructions. *Id.* The Tenth Circuit emphasized that the ALJ had placed great weight on the consultative psychiatrist's opinion but failed to explain why he did not incorporate this particular limit into the RFC. *Id.*

<blockquote>

**b.  It appears that the ALJ interpreted Dr. LaCourt's limitation as one on carrying out simple instructions.**

</blockquote>

In deciding whether an ALJ has failed to incorporate a limitation in a plaintiff's ability to carry out instructions, courts discussing *Jaramillo* distinguish between limitations on carrying out *simple* versus *detailed* instructions. For example, in *Shawbaker v. Colvin*, 189 F. Supp. 3d 1168 (D. Kan. 2016), the ALJ limited the plaintiff to "simple, routine and repetitive tasks consistent with unskilled work" in "a low-stress work environment with only occasional interaction with co-workers and the public." *Shawbaker*, 189 F. Supp. 3d at 1171. In making this RFC determination, the ALJ had "relied" upon[6] the opinion of a consultative psychologist, who found that the plaintiff there was not significantly limited in her ability to carry out very short and simple instructions, but was moderately limited in her ability to carry out detailed instructions. *Id.* at 1173.

The *Shawbaker* plaintiff argued that *Jaramillo* supported her theory that the RFC did not reflect her mental impairments. *Id.* The court distinguished *Jaramillo*, "because the consultant upon whom the ALJ relied found that plaintiff was less impaired than the claimant in *Jaramillo.* [Ms. Shawbaker] was considered moderately limited in her ability

---

[6] The *Shawbaker* court does not disclose what weight the ALJ gave the consultative psychologist. *Shawbaker*, 189 F. Supp. 3d at 1172-73.

to carry out **detailed** instructions, not **all** instructions." *Id.* (emphasis added). The court

concluded that the RFC comported with SSR 85-15 and with the Tenth Circuit's

decision in *Jaramillo. Id.*

> [T]he ALJ's description of plaintiff's RFC – i.e., that plaintiff would be
> limited to simple, routine and repetitive tasks consistent with unskilled
> work and that she would be precluded from production-rate job tasks but
> could tolerate a low-stress work environment and only occasional
> interaction with co-workers and the public – sufficiently expresses
> plaintiff's moderate limitations in carrying out detailed instructions,
> maintaining attention and concentration for extended periods, and
> interacting with the general public.

*Id.* (citing *Adkins v. Colvin*, 2015 WL 4324564 *10 (D. Colo. July 26, 2015) ("unskilled

work limitation adequately expresses similar mental restrictions"); *Vigil v. Colvin*, 805

F.3d 1199, 1203-04 (20th Cir. 2015) ("unskilled work limitation adequately accounts for

moderate limitations in concentration, persistence and pace where there was a specific

finding that the claimant had enough memory and concentration to perform simple

tasks")).

In *Whelan v. Colvin*, No. CIV-15-129-R, 2016 WL 562871 (W.D. Okla. Jan. 22,

2016), *R. & R. adopted*, No. CIV-15-129-R, 2016 WL 593835 (W.D. Okla. Feb. 12,

2016), the court found *Jaramillo* inapplicable because the consultant in *Whelan* had

"found moderate difficulties in [the plaintiff's] ability to understand, remember, and carry

out detailed instructions," whereas in *Jaramillo*, the consultant's opinion did "not indicate

whether the plaintiff was moderately impaired in her ability to perform work with detailed

versus complex instructions, only that the impairment existed." *Whelan*, 2016 WL

562871, at *8; *see also Knight v. Colvin*, CIV 15-0882 KBM, 2016 WL 9489144, at *7

(D.N.M. Dec. 5, 2016) (noting that the psychologist in that case had not made a "distinction . . . between simple versus complex instructions").

Dr. LaCourt opined that Plaintiff has a moderate limitation in her ability to carry out instructions due to "task impersistence"; he did not specify whether this means she is limited in carrying out simple and/or detailed instructions. In fact, he did not offer any explanation about what he meant by "task impersistence," which is not a term that ordinarily appears in social security regulations or relevant caselaw.

ALJ Weiss failed to explicitly recognize that Dr. LaCourt's limitation on carrying out instructions does not reference either simple or detailed instructions. The ALJ did offer some discussion of his findings on Plaintiff's ability in this area. First, in discussing his finding that Plaintiff has moderate difficulties with respect to concentration, persistence and pace,[7] the ALJ said that Plaintiff's "testimony that she drives as a courier evinces her ability to concentrate and persist." AR at 15. Nonetheless, the ALJ expressly found Plaintiff "***more*** limited in the area of concentration, persistence and pace than Dr. LaCourt opined."[8] AR at 18 (emphasis added). ALJ Weiss also noted that while the DDS consultant found a moderate limitation on Plaintiff's ability to carry out *detailed* instructions, she found no significant limitation in Plaintiff's ability to understand and remember *very short and simple* instructions. *See* AR at 18, 64. Further, in the narrative explanation of the MRFC assessment, the DDS consultant explained that

---

[7] The ability to carry out simple and/or detailed instructions is listed under the section entitled "sustained concentration and persistence limitations" on the MFRAC form. *See*, *i.e.*, AR at 64.

[8] It is also important to note that ALJ Weiss gave Dr. LaCourt's opinion only partial weight. This is in contrast to *Jaramillo*, where the ALJ had given the psychiatrist's opinion *great* weight, then failed to explain why the opined moderate limitation on the plaintiff's ability to carry out instructions was not incorporated into the RFC. *See Jaramillo*, 576 F. App'x at 873, 876.

Plaintiff, while limited to unskilled jobs, "would be able to complete simple, routine work related activities[,]" which necessarily includes the ability to carry out simple instructions. AR at 66; *see also* SSR 85-15.

It is telling that the DDS consultants – and the ALJ in discussing the consultants' opinions – distinguished between Plaintiff's abilities to carry out short and simple versus complex instructions. From the ALJ's limited discussion, it appears that the ALJ considered Dr. LaCourt's nonspecific opinion regarding "task impersistence" to call for a limitation to carrying out *simple* instructions only. This is only an inference, however, and one the Court is not comfortable making. "If the Court were to affirm the ALJ's holding, it would have to read such an explanation, post hoc, into the ALJ's decision." *See Doom v. Colvin*, No. CIV-15-409-R, 2016 WL 3248590, at *3 (W.D. Okla. June 13, 2016); *see also See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The Court will remand for further analysis of this issue and asks the ALJ to explicitly discuss this moderate limitation and Plaintiff's limitations on carrying out both simple and detailed instructions.

**B.      The ALJ did not adequately account for the DDS consultants' opinions on Plaintiff's moderate limitation regarding interruptions from psychological symptoms.**

Plaintiff next argues the ALJ did not account for two moderate limitations that the DDS consultants found "in the areas of completing a workday without interruptions from psychological symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods." *Doc. 20* at 11 (citing AR at 65). Plaintiff proffers that "these limitations are consistent with Dr. LaCourt's finding of a moderate limitation from 'task impersistence.'" *See id.* The Court agrees that the limitation in performing at a

consistent pace is very similar to the limitation regarding "task impersistence," and the Court will ask the ALJ to address this limitation for the reasoning described above in Section IV(A)(2).

The Court also agrees that ALJ Weiss failed to account for the remaining moderate limitation regarding interruptions from psychological symptoms. Here, the DDS consultants both indicated a moderate limitation in this area and specified in the MRFC narrative portion that Plaintiff "would experience *occasional* interruptions in her workweek due to feelings of anxiety." AR at 66, 95 (emphasis added). *See Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016) (instructing courts to examine the MRFC narrative, not simply the "notations of moderate limitations").

The mental abilities needed for any job include "the ability to complete a normal workday and workweek *without interruptions* from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Social Security Program Operations Manual System ("POMS") § DI 25020.010, http://policy.ssa.gov/poms.nsf/lnx/0425020010 (emphasis added) (quoted in *Ellis v. Berryhill*, 2:15-CV-00917-LF, 2017 WL 3084467, at *5 (D.N.M. July 19, 2017)). "These requirements are usually strict." *Id.* The Court finds the facts here are analogous to those in *Ellis v. Berryhill*, where the non-examining state agency psychological consultant also noted the plaintiff would have "occasional interruptions from psychological symptoms," among other limits. *Ellis*, 2017 WL 3084467, at *4. The court found that because the "ability to complete a normal workday and workweek without psychologically based interruptions . . . is a general requirement for all jobs, the ALJ" erred in failing to address the limitation in determining the plaintiff's RFC. *Id.* at *5 (citing

*Bowers v. Astrue*, 271 F. App'x 731, 733-34 (10th Cir. 2008)). While the Court observes that Plaintiff's mental limitations have improved since the DDS consultants' formulated their opinions, the ALJ did not specifically discuss this limitation in his decision. Because "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself[,]" it must grant Plaintiff's Motion on this issue and remand for clarification. *See Haga*, 482 F.3d at 1207-08 (citations omitted).

**C.**     **The ALJ's past work and credibility findings were adequate, but the ALJ should address any inconsistency between Plaintiff's RFC and the level-two reasoning requirement regarding "detailed but uninvolved" instructions.**

Plaintiff argues that the ALJ's past work finding is unsupported by substantial evidence because he: (1) incorrectly omitted several limitations from her RFC finding, (2) made an improper credibility finding, and (3) failed to make appropriate findings regarding the demands of her past work and whether she may now meet those demands. *Doc. 20* at 11-12.

**1.**     **The Plaintiff has waived any argument about the ALJ's RFC determination regarding her headaches and manipulative impairment.**

Plaintiff contends that ALJ Weiss failed to consider the limiting effects of her headaches and manipulative impairment. *Id.* at 12-15. Plaintiff summarizes the record evidence and makes the brief and conclusory argument that the "ALJ failed to weigh the medical opinions properly, . . . because she [sic] failed to recognize and analyze the medical records that support the findings of the limitations." *Doc. 20* at 13; *see also id.*

at 13-15. Yet Plaintiff fails to present any kind of analysis or authority to support her argument.

The Court notes that the ALJ discussed both of these impairments in his decision. AR at 14. He cited to numerous medical records and discussed Plaintiff's hearing testimony. AR at 14 (citing AR at 263-64, 285, 303, 305, 309, 371, 376, 380-81, 392); *see also* AR at 31-36; 227. Without developing her arguments on this issue, the Court is left to assume that she is simply offering another possible view of the evidence. The Court declines to second-guess the ALJ's decision and will deny Plaintiff's Motion on this issue.

### 2. The ALJ's credibility finding stands.

Plaintiff argues that ALJ Weiss erred when he "concluded that [Plaintiff's] reports of symptoms were not credible because 'it does not appear that she has sought treatment.'" *Doc. 20* at 15 (quoting AR at 19). Plaintiff also takes issue with the ALJ's failure to request certain medical records. *Id.* at 16.

Plaintiff contends it was error for ALJ Weiss to question her credibility when he "referred twice in his decision to the lack of medical records." *Doc. 20* at 16. Plaintiff cites Tenth Circuit authority for the proposition that "consideration of the amount of treatment received by a claimant does not play a role in [the] determination" of the severity of a mental impairment. *Doc. 20* at 15 (quoting *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (alteration in original)).

"When a claimant establishes a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms complained of, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the

symptoms to determine the extent to which the symptoms affect the claimant's capacity for work." *Holcomb v. Astrue*, 389 F. App'x 757, 760 (10th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c), 404.929(c)). "To do this, the ALJ must make a finding about the credibility of the claimant's statements regarding the symptoms and their functional effects." *Id.* (citing Soc. Sec. Ruling, SSR 96-7p, Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *1 (July 2, 1996)). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Id.* (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation omitted)). "[F]indings with respect to a claimant's credibility 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (internal quotation omitted)).

The Court agrees that it would be improper for the ALJ to have determined Plaintiff's credibility solely on the lack of medical records. The Court finds, however, that ALJ Weiss was not simply basing his credibility determination on a lack of treatment records; rather, he was commenting on the fact that her claims of the severity of her impairments are inconsistent with the record evidence. *See* AR at 19. The ALJ also noted that Plaintiff's mental impairments have shown improvement to the point that she is able to maintain a part time job. AR at 19. The Court finds ALJ Weiss's credibility finding is sufficiently linked to substantial evidence and will deny Plaintiff's Motion on this issue.

Plaintiff also contends the ALJ erred by failing to request specific medical records. *Doc. 20* at 16. In his decision, the ALJ noted that Plaintiff reported to Dr. LaCourt that she was "voluntarily hospitalized a couple of months prior to the examination because she thought someone was after her, although no such report appears in the record." AR at 17 (citing AR at 401). Plaintiff argues that her 2012 hospitalization is evidence that she has a disorder not considered by the ALJ – stress disorder.[9] *Doc. 20* at 16-19.

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)). "A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised.'" *Id.* (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (internal citation omitted)). "As a result, '[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.'" *Id.* (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (internal citations omitted)). "Nonetheless, in cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, 'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored,'

---

[9] The ALJ did mention that Plaintiff was "assessed with substance induced psychotic disorder (meth) and acute stress disorder" as a result of her July 2012 emergency psychiatric stay. AR at 16.

and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" *Id.* (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (internal citation omitted)).

At the hearing, the ALJ asked Plaintiff's counsel, Mr. Harris, if he had a chance to review the record, and if he had other exhibits to offer. AR at 29-30. Mr. Harris answered in the negative. AR at 30. The ALJ noted that he "was previously informed that [Mr. Harris was] going to be requesting additional medical records from a Dr. Rios covering the 2014 time frame and possibly some physical therapy records." AR at 30. Notably, Mr. Harris never raised the issue of an alleged "stress disorder," nor did he mention the missing hospitalization record. The ALJ was entitled to rely on Plaintiff's counsel, who had presumably seen the same note in Dr. LaCourt's opinion.

The Court does not agree that the ALJ erred in failing to request this record. Because the Court is remanding the case, however, the Court will direct the ALJ to consider this additional medical record if Plaintiff can produce it. It is Plaintiff's burden, however, to locate and submit the record.

### 3. The ALJ's decision adequately accounted for how Plaintiff performed her past relevant work.

Plaintiff argues that the ALJ committed error in failing to ask Plaintiff how she performed her past relevant work. *Doc. 20* at 19-21 (citing *Wells v. Colvin*, 727 F.3d 1061, 1075 (10th Cir. 2013) ("detailed information about . . . mental demands [of past relevant work] . . . must be obtained *as appropriate*") (internal quotation omitted)). To the extent Plaintiff references her earlier arguments regarding the alleged *marked* limitations in task impersistence, working without supervision, and working with

supervisors (*see Doc. 20* at 19), the Court has already found that substantial evidence supported the ALJ's findings on these limitations. Otherwise, Plaintiff "makes no specific argument concerning sufficiency of the evidence to support the ALJ's finding that she can meet the demands of her past relevant work. Instead, she targets the ALJ's alleged failure to" determine how Plaintiff performed her past work. *See Doyal*, 331 F.3d at 760. *See also Doc. 20* at 19-20.

The Court disagrees and finds that the question of how Plaintiff performed her past work was adequately explored at the hearing by both Plaintiff's attorney and the ALJ. For example, Mr. Harris asked her if she leaves work when she gets a headache. AR at 33. Plaintiff responded that rather than leaving, she sits down and relaxes. AR at 33. Mr. Harris followed up, "[b]ut if it lasted several hours, would you be able to [work?]" Plaintiff answered, "I'll still work, but it hurts. You know usually when I'm driving, . . . I just rock is what I do."[10] AR at 33. He asked Plaintiff about the number of hours she works and how long she has been working, her job duties as a courier, and what was difficult for her as a housekeeper. AR at 34-35. Mr. Harris then asked Plaintiff again about how she handles headaches while driving as a courier. AR at 36. Later, Mr. Harris asked about Plaintiff's anxiety relative to coworkers, supervisors, and crowds, and he asked her how she deals with panic attacks, particularly during deliveries. AR at 38-40.

ALJ Weiss then asked questions about her past relevant work: he elicited testimony on what she delivers, the weight of her deliveries, how long she drives, and what she does during a delivery (AR at 40-41), her work as a pastry chef and a

---

[10] Plaintiff points out one particular alleged deficiency, in that she testified that if her employer asks her to work when she has a headache, she will decline. *Doc. 20* at 20 (citing AR at 34). But as the testimony above shows, Plaintiff also testified that she will work through a headache if she gets one when she is already at work.

cashier/stocker at a gas station (AR at 41-42), and her work as a house cleaner, including when she last did a house cleaning job, and what her duties were (AR at 42-43). The ALJ also asked her, with respect to her courier job, to what extent she comes into contact with people ("all the time") and coworkers ("I don't see them"), and asked if she has problems working with people ("No, because everybody says I always have a smile on my face"). AR at 45. Plaintiff's attorney then followed up with more questions about her ability to work full-time (AR at 45-46), additional questions about long-term deliveries (AR at 46-47), and her feelings about being around strangers (AR at 47). The line of questioning at the hearing was sufficient to establish how Plaintiff performed her past work.

Plaintiff next argues that it was error for the ALJ to rely "on the VE testimony that [Plaintiff] could work 'as [she] performed the jobs and as they are generally performed[,]'" because the VE testimony was "not at all clear on this issue." *Doc. 20* at 19 (quoting AR at 19). Plaintiff further asserts that "the VE did not testify that he had reviewed the information in the file regarding how [Plaintiff] actually performed the jobs." *Doc. 20* at 20. After Plaintiff's testimony concluded, the ALJ asked the VE if he had "*read* and listened to the claimant's testimony regarding work history[,]" which the VE answered in the affirmative. AR at 48 (emphasis added). That the VE testified he had "read" about Plaintiff's work history is satisfactory.

The ALJ then specified Plaintiff's nonexertional limitations and asked if she could perform her past work; the VE said she could be a housekeeper or a courier. AR at 49. The ALJ asked if the VE's testimony was "consistent with the DOT[,]" and the VE affirmed it was. AR at 51. The ALJ further inquired if Plaintiff was "off-task 15 percent of

the eight-hour workday including normal breaks, could [she] perform her past work . . . ." AR at 51. The VE responded that Plaintiff could still perform the courier job, but not the housekeeper job. AR at 51. Finally, the ALJ asked if Plaintiff's "prior work as [the VE] classif[ied] it, was that performed and as found in the DOT?" AR at 51-52. The VE answered, "Yes, Your Honor. They're one in the same." AR at 52. In his decision, the ALJ noted the VE testified that "a person with [Plaintiff's RFC] could perform any of [her] past relevant work . . . as [she] performed the jobs and as they are generally performed." AR at 19. The Court finds that the VE had sufficient information to formulate an opinion on Plaintiff's abilities, and the ALJ properly relied on the VE's testimony. The Court will deny Plaintiff's Motion on this issue.

### 4. The ALJ should address the inconsistency between the VE testimony and the DOT.

Finally, Plaintiff contends that ALJ Weiss "failed to reconcile inconsistencies in the VE testimony with information in the Dictionary of Occupational Titles" (DOT), in that the reasoning level of deliverer/courier is not consistent with the ALJ's finding that Plaintiff is limited to simple work. *Doc. 20* at 21. The Tenth Circuit has held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* Soc. Sec. Ruling, SSR 00-4p, Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *2 (Dec. 4, 2000). This is an "affirmative responsibility" in which the adjudicator must

both "[a]sk the VE . . . if the evidence he or she has provided conflicts with the information provided in the DOT; and [i]f the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4.

The Tenth Circuit extended these principles to General Educational Development (GED) reasoning levels in *Hackett*, 395 F.3d at 1176. GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appx. C, Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* At issue here is the Reasoning Development division, which has six defined levels, with one representing the lowest level and six representing the highest. *Id.*

Plaintiff argues that the deliverer/courier job, with a reasoning level of two, is inconsistent with Plaintiff's RFC limitation to simple, routine, and repetitive tasks. *Doc. 20* at 21. A reasoning level of two requires a worker to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." 1991 WL 688702. As Plaintiff points out, the fact that reasoning level two requires an understanding of "detailed but uninvolved" instructions, *see id.*, seems to conflict with Plaintiff's RFC, which limits her to "simple, routine and repetitive tasks" and to making "simple work related decisions . . . ." *See* AR at 17. Because the Court is remanding this case for other reasons, the ALJ should also address any inconsistency between Plaintiff's RFC and the requirement for an understanding of "detailed but uninvolved"

instructions in the level-two reasoning deliverer/courier job identified as appropriate for her. *See Hackett*, 395 F.3d at 1176.

## V. Conclusion

The Court finds that this case should be remanded for the ALJ to address the following: (1) address Dr. LaCourt's finding of a moderate limitation on Plaintiff's ability to carry out instructions due to task impersistence; (2) address the DDS consultants' opinions on Plaintiff's moderate limitation regarding interruptions from psychological symptoms; and (3) address any inconsistency between Plaintiff's RFC and the requirement for an understanding of "detailed but uninvolved" instructions in the level-two reasoning deliverer/courier job identified as appropriate for her. If Plaintiff produces the missing 2012 hospitalization record referred to in Section IV(C)(2), the ALJ should consider it as part of the record.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (*Doc. 20*) is **granted**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent